UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
RBS HOLDINGS, INC., formerly known as :
GORDON & FERGUSON OF DELAWARE, INC., :
:
                    Plaintiff, :
: **06 Civ. 6404 (HB)**
            - against - :
: **OPINION & ORDER**
GORDON & FERGUSON, INC., :
:
                    Defendant. :
:
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      On August 31, 2007, Defendant Gordon & Ferguson, Inc. ("GFI") moved this Court to dismiss under Fed. R. Civ. P. 12(c) the action brought by Plaintiff RBS Holdings, Inc. ("RBS") and to grant under Fed. R. Civ. P. 56 summary judgment in favor of GFI. Should this Court reject GFI's arguments for dismissing the action in its entirety, GFI moves alternatively to dismiss, pursuant to Fed. R. Civ. P. 12(c), Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. For the reasons set forth below, Defendant's motions are DENIED.

## I.  FACTUAL BACKGROUND

      Plaintiff RBS, a Delaware corporation, is an importer and wholesaler of clothing and, at all relevant times, had its principal place of business in Minnesota. Compl. ¶ 8. Defendant GFI is a New York corporation with its principal place of business in New York, New York. Compl. ¶ 9.

      On February 28, 2006, RBS and GFI entered into an agreement by which RBS would sell substantially all of its assets to GFI (the "Second Amended and Restated Purchase Agreement," or "APA"). Def.'s Mot. Dismiss Ex. D (hereinafter "APA"). The APA required GFI to pay RBS: 1) a flat sum of $2.1 million, payable in installments and subject to certain deductions (the "Liquidated Amount"), and 2) certain percentages of GFI's net sales from March 1, 2006 through February 28, 2009 (the "Earn-Out"). APA § 1.3(b).

      A condition precedent to the sale was the consent of two secured lenders to RBS: Wells Fargo Century, Inc., formerly known as Century Business Credit Corporation ("Wells Fargo")

1

and The CIT Group/Commercial Services, Inc. ("CIT"). APA § 5.2(g). Under agreements dated March 13, 2003, RBS had granted to Wells Fargo and CIT security interests in all of its assets. Def.'s Mot. Dismiss Ex. C (hereinafter "Consent & Release") 1. On March 15, 2006, Wells Fargo and CIT executed a Consent and Release, whereby they released their security interests and consented to the asset sale to GFI. Consent & Release 1. The Consent and Release provides that "until such time as each of Wells Fargo and CIT has notified [GFI] in writing that all of the payment obligations of [RBS] to Wells Fargo and CIT, respectively, have been paid in full," GFI would make its payments of the Liquidated Amount and Earn-Out directly to Wells Fargo and CIT, respectively. Consent & Release 2, ¶ 3.

> The Consent and Release further provides that RBS
>
> delegates and assigns to Wells Fargo (and to CIT, subject to the obligations of [RBS] to Wells Fargo having been paid in full prior to the payment in full of the obligations of [RBS] to CIT) the power, upon prior notice to [RBS], to exercise all of the rights of [RBS] set forth in the APA in respect of the calculation, adjustment, collection, enforcement and receipt of the [Liquidated Amount] and Earn-Out (including the right to settle and compromise such amounts on behalf of [RBS]). [GFI] hereby acknowledges and consents to such delegation.

*Id.* On the date of the Consent and Release, March 15, 2006, RBS was indebted to Wells Fargo and CIT in the amounts of $7,281,864.01 and $2,708,909.08, respectively. APA 2 ¶ 4.

Wells Fargo notified RBS in a letter dated August 22, 2006 that pursuant to the Consent and Release, it would "exercise all of the rights of [RBS] set forth in the APA in respect of the calculation, adjustment, collection, enforcement and receipt of the [Liquidated Amount] and Earn-Out, each as defined in the APA, including the right to settle and compromise such amounts on behalf of [RBS]." Def.'s Mot. Dismiss Ex. E. The parties' papers are silent as to what Wells Fargo did, if anything, to enforce its right to the Liquidated Amount and Earn-Out.

The next day, on August 23, 2006, RBS filed this action alleging that GFI "has continuing payment obligations to Plaintiff, including payment of the Liquidated Amount, which Defendant has not satisfied." Compl. ¶ 9.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(c), "[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). A court "may also consider written instruments attached as exhibits as well

as documents that are incorporated by reference or heavily relied upon." *World Book, Inc. v. Int'l Bus. Machs. Corp.* 354 F. Supp. 2d 451, 453 (S.D.N.Y. 2005) (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002)). "[A] court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994) (internal quotation marks and citation omitted).

A court will not grant a motion for summary judgment pursuant to Fed. R. Civ. P. 56 unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## III. DISCUSSION

### A.  Plaintiff RBS's Standing to Bring This Action

Defendant GFI argues that the Consent and Release's assignment provision stripped RBS of standing to sue GFI. Plaintiff RBS argues that it has standing because the assignment of its rights under the APA to Wells Fargo and CIT was not complete and merely amounted to security for its antecedent debt to Wells Fargo and CIT.

"An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." *Aaron Feder & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984) (applying New York law). However, when an assignment is "more in the nature of . . . security for an antecedent debt owed to the assignee, . . . New York law recognizes the right of the assignor . . . to sue the obligor . . . in order to enforce its rights and ensure that the assignee prosecutes the cause vigorously." *Id.* (assignee was not a party to the lawsuit because it had previously released any causes of action against the defendant). In *Aaron Feder*, the Second Circuit held that the assignment was in the nature of security for an antecedent debt—and thus the assignor had standing to sue the obligor—where the assignment was of "all our rights and interests in the copper wheresoever situate or if sold in the sale proceeds thereof" and the assignor authorized the assignee "to take

all necessary action in your own name or ours to enforce your rights over the copper[,] to sell the copper and to realise and collect the sale proceeds without reference to us." *Id.* The language of the assignment at issue here is remarkably similar.

In *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 355 N.Y.S.2d 856, 858 (N.Y. App. Div. 1974), the court held that a property owner's assignment of rent to its secured lender was for security purposes only and the owner was a proper party to an action against the lessee. The court reasoned that

> [w]here rents are assigned as security and collected to service an underlying indebtedness, the assignor should remain a proper party to protect its own interest that the rents are in fact collected. To hold otherwise would allow the assignee to place the assignor in default on the secured obligation, simply by failing to make sure that the rent was collected from a perhaps reluctant lessee. Implicit in any assignment of a claim for security is a reservation to the assignor of the right to pursue the claim if the assignee chooses not to do so.

*Id. See also Agristor Leasing v. Barlow*, 579 N.Y.S.2d 476 (N.Y. App. Div.), *appeal dismissed*, 600 N.E.2d 635 (1992) (assignor could sue obligor because assignment of rents was security for unrelated, preexisting loan to assignee and because assignment was terminable upon repayment).

### 1. *Plain Meaning of the Assignment*

This Court need not look beyond the plain language of the Consent and Release to determine whether the parties intended to effect a complete assignment or denominate collateral security for an antecedent debt. *See, e.g., American Exp. Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990) ("Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement. Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment.") (internal citations omitted).

Here, the assignment provided that until Wells Fargo and CIT were paid the total amount owed them by RBS, they were authorized to exercise all RBS's rights in the APA with respect to the calculation, adjustment, collection, enforcement and receipt of the Liquidated Amount and Earn-Out, including the right to settle and compromise such amounts on behalf of RBS, but only upon prior notice to RBS. Consent & Release 2, ¶ 3. In light of the case law cited above, the Consent and Release's plain language shows that the assignment was not complete and was security for RBS's preexisting debt to Wells Fargo and CIT.

### *2. Relative Amounts Owed by RBS and GFI Are Not Relevant*

At the time of the assignment RBS owed Wells Fargo and CIT over $9 million, but GFI owed RBS only the Liquidated Amount of $2.1 million, less deductions, and the Earn-Out's percentage of net sales. The amount owed by RBS to Wells Fargo and CIT (over $9 million) was therefore vastly greater than the amount owed by GFI to RBS ($2.1 million plus the Earn-Out, which could not reasonably have been expected to make up the difference). On this basis, GFI reasons that RBS would never receive any payments under the APA from GFI; all the payments would go to Wells Fargo and CIT (RBS's lenders and assignees) under the assignment. GFI thus argues that RBS's assignment to Wells Fargo and CIT was complete and extinguished any interest of RBS in GFI's payments under the APA.

This Court disagrees with GFI. The assignment likely was insufficient to pay the full extent of RBS's debts to Wells Fargo and CIT, and RBS likely would never receive payments for its own benefit under the APA. Nevertheless, the assignment's unambiguous language indicates that the parties intended it to be partial security for the assignees' preexisting loans to RBS. The assignment by its terms not only ceases when Wells Fargo and CIT are paid in full, but also evinces RBS's ongoing interest in GFI's obligations. For example, Wells Fargo and CIT are obligated to notify RBS before exercising the assignment and may settle amounts due from GIF "on behalf of RBS." Consent & Release 2, ¶ 3. The Consent and Release's reference to Wells Fargo as "Collateral Agent" further supports the conclusion that the assignment was not complete. *See id.* ¶ 2. RBS has a further interest in GFI's payments because they will decrease RBS's debts to Wells Fargo and CIT.[1]

### *3. Defendant's Argument That Assignment Was for New Consideration Lacks Merit*

Defendant's argument that the assignment was complete because it was for new consideration also lacks merit. Wells Fargo and CIT released their security interests in RBS's assets so that the asset sale to GFI could proceed, and RBS assigned to them GFI's payments under the APA. RBS's debt to Wells Fargo and CIT remained unchanged. The assignment effectively replaced, as collateral for the loans, RBS's assets with the payment due to RBS from GFI. In contrast to the case relied on by Defendant, *Macondo's Profit Corp. v. Motorola*

---

[1] Indeed, in a suit brought by Wells Fargo to collect RBS's debt, a New York state court entered judgment of approximately $3.4 million, plus interest and costs, against RBS's guarantors. *Wells Fargo Century, Inc. v. Peter Brown, et al.*, No. 602999/2006 (N.Y. Sup. Ct., N.Y. County, Sept. 11, 2007).

*Communications & Electronics*, 863 F. Supp. 148, 149 (S.D.N.Y. 1994), this case does not involve a situation were "an old debt was extinguished, a new debt took its place," and the assignment secures future payments.

Given RBS's interest and the plain language of the Consent and Release, RBS's assignment to its secured lenders was partial and operated as security for its antecedent debt to Wells Fargo and CIT. Therefore, RBS, as assignor, had standing to bring this action.

**B.     Joinder of Wells Fargo and CIT as Plaintiffs**

This Court has examined, *sua sponte*, whether CIT and Wells Fargo must be joined as necessary parties under Fed. R. Civ. P. Rule 19, "Required Joinder of Parties."[2] In response to a letter to Wells Fargo, CIT and the parties, in which I expressed my view that Wells Fargo and CIT appeared to be indispensable parties, both Wells Fargo and CIT waived, in writing to this Court, any participation in this proceeding.[3] Therefore, this Court need not engage in the analysis required by Fed. R. Civ. P. Rule 19(a) and (b) as to whether Wells Fargo and CIT are indeed necessary parties or, if they are, whether the action may proceed without them.

**C.     Plaintiff's Claim of Breach of Implied Covenant of Good Faith and Fair Dealing**

Should this Court refuse to dismiss the entire action, GFI argues that it should dismiss Plaintiff's claim of breach of the implied covenant of good faith and fair dealing as duplicative

---

[2] Because of the compelling due process considerations that underlie Fed. R. Civ. P. 19, "both the trial court and the appellate court may take note of the nonjoinder of an indispensable party *sua sponte*." 7 Charles Alan Wright, et al., *Federal Practice & Procedure* §§ 1602, 1609 (Thomson/West 2007) (citing *Manning v. Energy Conversion Devices, Inc.*, 13 F.3d 606, 609 (2d Cir. 1994)).

[3] Moreover, Wells Fargo "release[d] its right to recover any amounts paid to RBS by reason of judgment, settlement or otherwise" in this action, among others, in a release executed November 16, 2007 and delivered to RBS on February 28, 2008 pursuant to a settlement agreement dated November 8, 2007 between Wells Fargo and the RBS principals who had guaranteed RBS's debt to Wells Fargo. Plaintiff's counsel's letter dated March 18, 2008 to this Court ("Pl.'s 3/18/08 Letter") Exs. A, B. Pursuant to a settlement agreement, fully executed on May 22, 2007, between CIT and the RBS principals who had guaranteed RBS's debt to CIT, CIT agreed that, if RBS were to obtain any judgment against GFI, CIT would receive 25% of the proceeds after subtracting payment of reasonable attorneys' fees. Pl.'s 3/18/08 Letter Ex. C. These releases and agreements, in addition to Wells Fargo's and CIT's express waivers to this Court, bolster the conclusion that Wells Fargo and CIT need not be joined as plaintiffs in this action.

On March 19, 2008, some months after this matter was fully briefed and submitted, and only after my inquiry as to whether CIT and Wells Fargo had waived their necessary party status, Defendant's counsel wrote this Court to argue that the agreements between RBS, Wells Fargo and CIT, described above, show that RBS lacks standing to sue GFI. I disagree. While the agreements may show that Wells Fargo and CIT may have been necessary plaintiffs at the time this action commenced, and thus perhaps should have been joined as plaintiffs *alongside RBS* at that time, the agreements do not show that RBS itself lacked standing to sue GFI.

of, or intrinsically tied to, Plaintiff's breach of contract claim.

Count I of the Complaint alleges that "G&F is liable to RBS for its breach of the APA in that, *inter alia*, G&F has failed to comply with the provisions of the APA relating to payment of the Liquidated Amount and permissible deductions therefrom." Compl. ¶ 19. Count II alleges that GFI breached the implied covenant of good faith and fair dealing "through its wrongful refusal timely to perform the terms of the APA and its failure and/or refusal to clear through customs certain goods, the sale proceeds from which were to reduce any permissible deductions from the Liquidated Amount otherwise due Plaintiff." Compl. ¶ 23.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, *based upon the same facts*, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (emphasis added). Thus, where "the allegations underlying the breach of implied covenant of good faith and fair dealing are essentially identical to the basis for plaintiff's breach of contract claims, and plaintiff in pursuing this claim is seeking the same relief requested in the breach of contract claim," the breach of implied covenant claim should be dismissed as superfluous. *Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Comm'ns Corp.*, No. 06 Civ. 3157, 2007 WL 2244062, at *6 (S.D.N.Y. July 31, 2007). A breach of implied covenant claim is also redundant if it "is intrinsically tied to the damages allegedly resulting from a breach of the contract." *Canstar v. J.A. Jones Constr. Co.*, 622 N.Y.S.2d 730, 731 (N.Y. App. Div. 1995) (citing *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)).

Nevertheless, under New York law where one party to a contract grants to the other party a share in the benefits of its business "there [is] an implied obligation on the part of the respondents not to render valueless the right conferred by the contract." *Kirke La Shelle Co. v. Paul Armstrong Co.*, 188 N.E. 163, 168 (N.Y. 1933). *See also Pernet v. Peabody Eng'g Corp.*, 20 A.D.2d 781, 782 (N.Y. App. Div. 1964) ("It is implied that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."). Final resolution of a breach of implied covenant "cannot be made on a motion addressed to the face of the pleading nor on the basis of any speculation as to the extent of resulting damages." *Goodstein Constr. Corp. v. City of New York*, 489 N.Y.S.2d 175, 177 (N.Y. App. Div. 1985). *See also Home & City Sav. Bank v. Rose Assocs. I, L.P.*, 572 N.Y.S.2d

458, (N.Y. App. Div. 1991) (finding question of defendants' good faith "a peculiarly factual issue" that may not be resolved as a matter of law on summary judgment); *Pernet*, 20 A.D.2d at 782 (holding that whether defendant's acts constituted breach of implied covenant depended on facts to be presented at trial or on motion for summary judgment and could not properly be determined on the pleadings).

Here, Plaintiff argues that the implied covenant breach claim was not duplicative because, while the APA required GFI to use best efforts to sell certain inventory, APA § 1.3(h), GFI's obligation to clear that inventory through customs was implied as part of its duty of good faith and fair dealing. I agree. While the Complaint inexplicably never mentions the Earn-Out's percentage of net sales, Plaintiff claims in its opposition to Defendant's motion that "[b]ecause the sale price for the company depended on GFI's future sales, GFI had an implied good faith obligation to operate the company to maximize those sales. However, due to the actions—or in this case, inactions—by GFI, RBS has lost out on valuable Net Sales by GFI." Pl.'s Mem. in Opp. 14. Further, while RBS seeks total damages "in no event less than $2 million," Compl. 6, RBS seeks at least $2 million for *each* of its breach of contract and breach of implied covenant claims. Compl. ¶¶ 21, 24. At this stage in the proceedings and drawing all reasonable inferences in favor of RBS, Defendant's motion to dismiss the breach of implied covenant claim must be denied.

## IV. CONCLUSION

For the reasons stated, Defendant's motion is hereby DENIED in its entirety. The trial of this case is currently scheduled to begin April 21, 2008.

IT IS SO ORDERED.
New York, New York
March 26, 2008

U.S.D.J.

8